OPINION
Donald E. Fricke appeals and Mary M. Martin-Fricke cross-appeals from the final decree of divorce which terminated their marriage. The parties each raise issues regarding the trial court's division of property.
Donald[1] and Mary were married on February 15, 1992. Both had been married before, and they executed an ante-nuptial agreement concerning assets that each brought into the marriage. Donald and Mary intended the ante-nuptial agreement to be dispositive of those assets in the event they divorced.
During their marriage Donald and Mary lived on a horse farm that Donald owned, and which remained Donald's separate property per their ante-nuptial agreement. Each party participated in making substantial renovations and improvements to the farmhouse during the marriage, which led to an appreciation in its value. Mary also purchased fencing and a "bobcat" vehicle for the farm out of her separate funds. Donald conceded that Mary had purchased the bobcat for the farm, but maintained that the bobcat is his separate property because it was a gift to him from Mary.
For her part, Mary argued that marital assets were used to build out-buildings on the farm, to purchase farm equipment, and to pay off a $26,000 mortgage on the farm, entitling her to one-half of the value of these improvements to Donald's separate property. Donald maintained that the out-buildings, farm equipment, and mortgage were paid for with an inheritance from his parents, so they should remain his separate property.
Donald owned a dental practice in Dayton and the building in which the practice was conducted. Per their ante-nuptial agreement, both remained Donald's separate property. The practice appreciated considerably while Donald and Mary were married. The land and building in which the practice was conducted also appreciated. Mary worked in Donald's office, without pay, as a bookkeeper and receptionist. Mary asserted that a $57,000 mortgage on the property was paid off using marital assets, and therefore she was entitled to half the value of the mortgage payment. Donald again claimed that the value of the mortgage was his separate property because it was paid for with his inheritance.
Finally, Mary argued that five checks for $10,000 each which Donald's parents had made payable to her were her separate property, and that Donald had coerced her into endorsing the checks over to him. Donald maintained that the checks were intended by his parents to be gifts to him, which they gave late in their lives to avoid tax consequences.
The trial court found that while the ante-nuptial agreement was valid and enforceable, the agreement neglected to consider the appreciation of separate property during the marriage. Therefore, the court was required to make an appropriate award of the appreciation. The trial court also endeavored to resolve the ownership of contested property.
The trial court awarded Mary one-half of the appreciation of the farmhouse during the marriage, pointing to her contributions to its renovation. The trial court also found that the bobcat was not Donald's separate property but was, instead, marital property. The court awarded the bobcat to Donald, for use on the farm, but gave Mary a credit in the amount of the purchase price of the bobcat. Mary was similarly awarded a credit in the amount of the purchase price of the fencing that she had installed on the farm using her separate assets. Mary received no compensation for the appreciation in the value of the farm itself.
Regarding Donald's dental practice, Mary was awarded one-half the value of the appreciation of the practice during the marriage. Mary was also awarded $70,000 for her unpaid services while working in Donald's practice. However, Mary received no award for the appreciation of the dental office building and land.
Finally, the trial court found that the five checks written to Mary by Donald's parents were intended for Donald alone. Therefore, the court deemed this sum Donald's separate property.
Donald filed a timely notice of appeal. Mary filed a timely notice of cross-appeal. Their respective assignments of error are discussed below.
Donald's first assignment of error states:
 THE TRIAL COURT ERRED IN DETERMINING THAT THE BOBCAT AND TRACKS WERE DEFENDANT'S SEPARATE PROPERTY AND IMPROPERLY ADDED THE VALUE OF SAID BOBCAT AND TRACKS TO THE DEFENDANT'S MONETARY AWARD.
As a preliminary matter, the attention of Donald's counsel is directed to App.R. 19(A), which requires that briefs be double-spaced between each line of text, except for quoted matter. Given the amount of reading required of every appellate judge, we can assure counsel that this rule serves an important purpose. Rather than penalizing Donald as a party, counsel is reminded of that requirement, and his cooperation is requested in conforming to it in the future.
A trial court is required to determine what property is marital and what property is separate, and to distribute the parties' separate property to each of them and divide and distribute their marital property equitably between them. R.C. 3105.171 (B) (D). An equal division of marital property is presumed to be equitable. R.C. 3105.171(C)(1).
A trial court has broad discretion in dividing marital property in domestic relations cases, and the trial court's decision will be upheld absent an abuse of discretion. Middendorf v. Middendorf (1998),82 Ohio St.3d 397. Thus, we may not reverse unless we find that the trial court acted arbitrarily, unreasonably, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. However, trial court decisions may be found unreasonable if there is no sound reasoning process that would support that decision. AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157; Canfarelli v. Canfarelli (July 14, 2000), Montgomery App. No. 18145, unreported.
Per R.C. 3105.171(A)(3)(b), marital property does not include any "separate property." Separate property is defined by division (A)(6)(a)(vii) to include "[a]ny gift of real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
The clear and convincing evidence standard required under the gift exception is evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. While clear and convincing evidence is more than a mere "preponderance of the evidence," it does not rise to the level of evidence required for proof "beyond a reasonable doubt" in criminal cases. Id.
An inter vivos gift is an "immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." Helton v. Helton (Sept. 26, 1996), Montgomery App. No. 15540, unreported, at **2, quoting Smith v. Shafer (1993), 89 Ohio App.3d 181,183. The essential elements of an inter vivos gift are: 1) intent of the donor to make an immediate gift, 2) delivery of the property to the donee, and 3) acceptance of the gift by the donee. Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21. Regarding gifts between spouses, the donee-spouse has the burden of showing by clear and convincing evidence that the donor-spouse made the gift with the intention of waiving all rights and interests he or she may have in the gift items as marital property. Focke v. Focke (1992), 83 Ohio App.3d 552.
The trial court found that Mary had purchased the bobcat for the farm with funds from her separate account. Donald bore the burden of proving, by clear and convincing evidence, that Mary intended the bobcat to be a gift to him, and not merely a contribution for the upkeep of the property on which they lived. Our review of the record supports the trial court's finding that Donald failed to prove by clear and convincing evidence that Mary intended to waive her rights in the bobcat as marital property. Therefore, the trial court did not abuse its discretion when it found the bobcat to be marital property and awarded Mary an amount equal to the value of the bobcat.
The assignment of error is overruled.
Donald's second assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT DEFENDANT SHOULD BE AWARDED $70,000.00 IN UNPAID LABOR BASED ON A THEORY OF UNJUST ENRICHMENT.
Donald argues that the trial court should not have awarded Mary a $70,000 judgment for the value of her unpaid labor during the time that she worked in Donald's office. We agree.
In defining marital property, R.C. 3109.171(A)(3)(a) refers to all real or personal property or an interest therein that currently is owned by either of the spouses or which either spouse currently has. A mere expectancy is not property or an interest therein. Zimmie v. Zimmie (1984), 11 Ohio St.3d 94. Mary's claim for unpaid wages, if it is subject to any relief at all, is an inchoate civil claim for compensatory damages. It is outside the definition of marital or separate property that R.C. 3105.171(C)(1) charges the court to distribute and divide between the parties in a divorce proceeding. Therefore, the trial court erred when it awarded Mary $70,000 on her claim for unpaid wages, whether out of the marital property or Donald's separate property.
Mary's claim on this account, if it is subject to any relief in this proceeding, must be considered in connection with division (A)(3)(a)(iii) of R.C 3105.171. That section states that marital property includes all appreciation on separate property "due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." Therefore, unless the appreciation in the value of one of the spouse's separate property is wholly passive, not due to the contributions of either spouse, it is marital property that must be divided. Middendorf v. Middendorf, supra.
The court applied that rule correctly when it divided the appreciation in the value of Donald's dental practice, which was his separate property, because it resulted from the labor of both spouses. Any relief on Mary's claim for her contributions in that regard that the court might grant in this proceeding is limited to one-half of that appreciation, which Mary was awarded. The trial court erred when it awarded her $70,000 for the value of her services, in addition.
The second assignment of error is sustained.
Mary's first and second assignments of error on cross-appeal state:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FOUND THAT THE INCREASE IN FARM VALUE WAS PASSIVE INCOME AND THAT MARY WAS NOT ENTITLED TO A PORTION OF IT.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FAILED TO CONSIDER THAT APPELLANT'S TWO PARCELS OF SEPARATE PROPERTY WERE ENCUMBERED WITH MORTGAGES AT THE TIME OF THE MARRIAGE, BUT WERE PAID OFF DURING THE MARRIAGE; SHE THUS SUBMITS THAT SHE IS ENTITLED TO HALF OF THE AMOUNTS USED TO PAY OFF THOSE PROPERTIES.
These assignments of error are interrelated, and will be considered together.
Any "[p]assive income and appreciation acquired from separate property by one spouse during the marriage" is likewise the separate property of that spouse. R.C. 3105.171(A)(6)(a)(iii). "`Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3109.171 (A)(4). (Emphasis supplied.) Therefore, "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage" is marital property. R.C. 3105.171(A)(3)(a)(iii). That section "unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." Middendorf, supra, at 400. (Emphasis in original.)
The farm appreciated in value during the marriage. So did the real property in which Donald's dental practice was conducted. To the extent that any part of the appreciation of either asset is "passive," it is Donald's separate property. To the extent that the appreciation was due to the labor, monetary, or in-kind contributions of either Donald or Mary during the marriage, the appreciation is marital property that the court must divide between Donald and Mary. R.C. 3105.171(A)(a)(iii); Middendorf, supra.
Any contribution that either spouse made merges into the appreciation, if any, that resulted. Therefore, Mary is not entitled to a separate award of the fencing she installed on the farm. Neither is she entitled to a direct credit for the mortgage payments that Donald made. Rather, she is entitled to share in any appreciation in the value of Donald's equity interest in the farm and the dental practice real property that resulted from the mortgage payments Donald made. Mary is also entitled to share in any appreciation in the value of those assets because of physical improvements that either of them made. The value of any physical improvements that were made must be determined from an increase in the market value of the asset that resulted.
Mary's first and second assignments of error are sustained.
Mary's third assignment of error on cross-appeal states:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT MARY WAS NOT ENTITLED TO THE $50,000 GIFT FROM DONALD'S PARENTS.
Donald's parents executed five separate checks payable to Mary in the amount of $10,000 each. Mary then endorsed each over to Donald. She argues that he coerced her into endorsing the checks, and that the $50,000 in proceeds was her separate property.
Donald denied coercing Mary into endorsing the checks. He testified that his parents intended the proceeds to be a gift to him, and made the checks payable to Mary only to avoid tax consequences. The trial court so found, concluding that Mary had endorsed the checks over to Donald because she knew that his parents intended the money to go to him.
Ordinarily, these monies would be marital property because they were acquired by one of the spouses during the marriage. However, where it is proven by clear and convincing evidence that the property was gifted by a donor who intended to benefit but one of the spouses, the gift is separate property. R.C. 3105.171(A)(6)(a)(iii). We have recently held that the "clear and convincing evidence" standard requires, in addition to testimony concerning the donor's intent, some objective evidence of that intent contemporaneous with the making of the gift. Marshall v. Marshall (May 4, 2001), Greene App. No. 2000CA95, unreported.
The trial court rejected Mary's coercion claim, viewing her act of endorsing the checks over to Donald as her voluntary cooperation to achieve his parent's purposes. Her conduct then also amounts to some objective evidence contemporaneous with the making of the gift that his parents intended their gifts to benefit Donald and not Mary, as Donald claimed. The evidence concerning tax avoidance demonstrates some plausible explanation of why the checks were made payable only to Mary, when the donors intended the benefit to go exclusively to Donald. Marshall, supra.
The assignment of error is overruled.
Conclusion
The judgment from which this appeal was taken is affirmed, in part, and reversed, in part, and will be remanded to the trial court for further proceedings consistent with this opinion.
WOLFF, P.J. and YOUNG, J., concur.
[1] For clarity and economy, the parties will be identified by their first names.