DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Martin appeals the judgment of the Marietta Municipal Court granting Sonnie Wheeler a judgment against him for $2,793.56. Martin argues that the trial court erred by failing to characterize an above ground swimming pool purchased by Wheeler and installed on real property owned by Martin as a completed inter vivos gift. Martin, therefore, contends that the trial court erred in finding him unjustly enriched when the parties ended their engagement and he retained possession of the swimming pool. Because we find that Martin failed to meet his burden of proving that the pool was a gift, and that there was some competent, credible evidence in the record tending to prove unjust enrichment, we overrule Martin's sole assignment of error and affirm the trial court's judgment.
 I. {¶ 2} The parties started dating in October 1999 and agreed to marry. Martin purchased Wheeler an engagement ring for $896.46. Wheeler then moved into Martin's home. During the course of the relationship, Martin made payments on various credit cards and loans held by Wheeler. In August 2001, Wheeler purchased an above ground pool for $4,000 and had it installed on Martin's property.
 {¶ 3} The parties ended their relationship in November 2001 and Wheeler moved out of Martin's home. At that time, Martin gave Wheeler $500. In November 2002, Wheeler filed a complaint against Martin in the Marietta Municipal Court, Small Claims Division, seeking a judgment of $3,000 plus interest for the pool that remained on Martin's property. Martin filed a counterclaim seeking a judgment of $2,576.89 as reimbursement for certain payments he allegedly made to Wheeler or on Wheeler's behalf. Martin later amended his counterclaim to reflect additional items he claimed to have paid on Wheeler's behalf. Although he alleged damages in excess of $3,000, he only sought to collect $3,000, the jurisdictional limit for the small claims division.
 {¶ 4} On March 6, 2003, Martin moved the court to remove the action to the general division based upon the fact that his counterclaim exceeded the jurisdictional limits of the small claims division. The trial court granted the motion, and removed the cause to the general division of the Marietta Municipal Court. Thereafter, Wheeler filed an answer to Martin's counterclaim seeking a judgment of $6,300, including: (1) A $200 insurance settlement check that she claimed Martin deposited into his business account without making the necessary repairs to her vehicle; (2) $1,500 for a storage building that remained on Martin's property; (3) $600 for a typewriter and air cleaner that remained in Martin's possession; and (4) $4,000 for the pool that remained on Martin's property.
 {¶ 5} At trial, the court heard testimony from both Wheeler and Martin. Wheeler testified that she bought the pool for herself and that she put the pool on Martin's property because she anticipated marrying Martin in the future. In contrast, Martin testified that he thought the pool was for the "family," including him, Wheeler, and their respective children.
 {¶ 6} The court rendered a decision, wherein it found that: (1) Wheeler purchased a pool for $4,000 and had it installed on Martin's property; (2) the pool was purchased for both parties to use at the home; (3) Martin purchased a ring for $896.46, which was a gift conditioned upon marriage; (4) Wheeler pawned the ring; (5) Wheeler signed over a check to Martin's business in the amount of $190.02, and that no work was performed on Wheeler's vehicle; (6) all of the payments Martin made to Wheeler to pay off credit cards and loans were valid, inter vivos gifts; (7) the storage building was a valid, inter vivos gift; and (8) "the $500 given by [Martin] to [Wheeler] was partial payment for the above items."
 {¶ 7} The court concluded that Wheeler intended for both parties to use the pool. Because the pool remained at Martin's home after Wheeler moved out, the court concluded that Martin was unjustly enriched by its presence. The court found that Wheeler was entitled to a judgment for $4,190.02 for the pool and the insurance check, and offset the judgment by $896.46, the value of the engagement ring, and by an additional $500 for the payment Martin made to Wheeler at the end of their relationship. Accordingly, the trial court granted Wheeler a judgment of $2,793.56.
 {¶ 8} Martin appeals, raising the following assignment of error: "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PROPERTY EXCHANGED BY AND BETWEEN THE PARTIES WERE NOT INTER VIVOS GIFTS AND THAT, AS SUCH, CONSTITUTED UNJUST ENRICHMENT." (Emphasis sic.)
 I. {¶ 9} In his brief, Martin argues that, based upon our holding in Cooper v. Smith, 155 Ohio App.3d 218,2003-Ohio-6083, the trial court erred by failing to determine that the pool Wheeler purchased and installed upon Martin's property was a completed inter vivos gift.
 {¶ 10} In Cooper, we found an engagement ring carried a special significance as a symbol of a couple's promise to marry. Based upon this special significance, we concluded that there was an implied condition upon the gift of an engagement ring. Accordingly, we held that "[u]nless the parties have agreed otherwise, the donor is entitled to recover the engagement ring (or its value) if the marriage does not occur, regardless of who ended the engagement." Cooper at ¶ 24.
 {¶ 11} Additionally, noting that other gifts given during an engagement lacked the symbolic meaning of the engagement ring, we held that "gifts exchanged during the engagement period (excluding the engagement ring) [are] absolute and irrevocable inter vivos gifts unless the donor has expressed an intent that the gift be conditioned on the subsequent marriage." Cooper at ¶ 26. Because Cooper failed to offer any evidence that he gave substantial gifts to his intended bride and her mother upon the express condition that they be returned to him if the engagement ended, we concluded the gifts were irrevocable inter vivos gifts, and Cooper was not entitled to their return. Cooper at ¶ 27. Further, we concluded that Cooper's claims for unjust enrichment had no merit because "`[e]nrichment of the donee is the intended purpose of a gift.'" Cooper at ¶ 28, quoting Lane v. Saunders
(Dec. 13, 1985), Gallia App. No. 85CA5.
 {¶ 12} Here, Martin only challenges the trial court's judgment as it relates to the pool. Martin notes that the trial court found that Wheeler purchased the pool for use by both parties, but claims that the court failed to discuss "the characterization of the item as a fixture which binds it to the real estate * * *." The essence of Martin's argument is that Wheeler installed the pool on his property and did not intend to remove it. Therefore, he claims that the pool has become a fixture of his real property, and, consequently, an irrevocable inter vivos gift to him.
 {¶ 13} A donee bears the burden of proving the existence of an inter vivos gift by clear and convincing evidence. In reFife's Estate (1956), 164 Ohio St. 449, 456. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations [or issues] sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt * * *." Cross v. Ledford
(1954), 161 Ohio St. 469, 477.
 {¶ 14} The requisite elements of a valid inter vivos gift include: "(1) intent on the part of the donor to make an immediate gift of particular property to the donee and to part with dominion and control over the subject of the gift; (2) delivery of the subject of the gift; and (3) acceptance of the gift." Anderson v. Anderson (July 7, 1992), Hocking App. No. 91CA1, citing 52 Ohio Jurisprudence 3d (1984) 8-9, Gifts, Section 3; Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21.
 {¶ 15} Therefore, in order to sustain his burden at trial, Martin had to produce clear and convincing evidence that: (1) Wheeler intended to make a gift of the pool to him, and to part with dominion and control over the pool; (2) that she delivered the pool to him; and (3) that he accepted the gift.
 {¶ 16} The existence of an inter vivos gift is ordinarily a question of fact. Leon v. Caroselli (May 21, 1997), Hamilton App. Nos. C-960364 and C-960612, citing 52 Ohio Jurisprudence 3d (1984, Supp. 1996), Gifts, Section 50. We give deference to the trial court as the trier of fact because it is best able to observe the witnesses and weigh the credibility of their testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. If some competent, credible evidence going to all of the essential elements of the case supports a decision, we will not reverse it as being against the manifest weight of the evidence.Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66; See C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 17} Here, Martin argues that the pool was a gift because it was installed upon his real property and became a "fixture which binds it to the real estate[.]" Martin claims that, by placing the pool on his real property, Wheeler intended it to become part of the real property, and, thereby, parted with dominion and control of the pool. Martin claims that the above ground pool Wheeler purchased and installed on his property is a gift, comparable to the new furnace or wood flooring that Cooper installed in the home of his future mother-in-law. Because we found the furnace and wood flooring in Cooper to be a gift, Martin reasons that we must also find the pool to be a gift.
 {¶ 18} "A fixture is an item of property which was a chattel but which has been so affixed to realty for a combined functional use that it has become a part and parcel of it." Holland FurnaceCo. v. Trumbull Savings Loan Co. (1939), 135 Ohio St. 48, paragraph one of the syllabus. The Ohio Supreme Court has enumerated the following criteria to be used in determining whether an item of property is a fixture: "[(1)] Actual annexation to the realty, or something appurtenant thereto[; (2)] Appropriation to the use or purpose of that part of the realty with which it is connected[; and (3)] The intention of the party making the annexation, to make the article a permanent accession to the freehold — this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made."Teaff v. Hewitt (1853), 1 Ohio St. 511, 530.
 {¶ 19} The Supreme Court has further refined this test by enumerating other factors a court may consider, including: "[t]he nature of the property; the manner in which it is annexed to the realty; the purpose for which the annexation is made; the intention of the annexing party to make the property a part of the realty; the degree of difficulty and extent of any loss involved in removing the property from the realty; and the damage to the severed property which such removal would cause."Mansheter v. Boehm (1974), 37 Ohio St.2d 68, paragraph two of the syllabus. Additionally, the Supreme Court's has held that a "slight attachment is sufficient if the other tests are met."Holland Furnace at 53.
 {¶ 20} "[T]he application of the principles of law with reference to fixtures or improvements upon real estate is difficult and depends upon the particular circumstances of each case * * *." Roseville Pottery, Inc. v. Cty. Bd. of Revision ofMuskingum Cty. (1948), 149 Ohio St. 89, 98. The Supreme Court has also noted that "* * * inasmuch as it requires a positive act on the part of the person making the annexation, to change the nature and legal qualities of a chattel into those of a fixture, the intention to make the article a permanent accession to the realty, must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel." Teaff at 533-534.
 {¶ 21} Martin argues that the pool is a fixture of his real property, and that Wheeler's installation of the pool upon his premises demonstrates her intention to make a present, inter vivos gift of the pool to him. The parties do not dispute that the pool is located on Martin's real property. However, Martin introduced no testimony or evidence tending to demonstrate how the pool was affixed to the property or whether it was permanently affixed to the property. Nor did Martin introduce any testimony or evidence tending to demonstrate that the pool's removal would cause serious damage to the freehold, or substantially destroy the pool.
 {¶ 22} While Martin's counsel sought to elicit testimony from Wheeler that a deck Martin erected around a portion of the pool made the pool "more affixed" to the property, Wheeler testified that it did not. Furthermore, Martin introduced no evidence, other than the simple fact that Wheeler installed the pool on his real property, to demonstrate that she intended to make the article a permanent accession to the realty. In fact, Wheeler testified that she purchased the pool for herself while she was living with Martin.
 {¶ 23} Based upon the foregoing, we cannot say that the trial court's determination that the pool was not a gift is against the manifest weight of the evidence. Martin relied upon his contention that the pool was a fixture of his real property to prove that Wheeler intended an immediate gift of the pool to him. However, Martin failed to present any testimony, evidence, or caselaw to support his legal conclusion that the above ground pool was a fixture. We note that in the context of property division in divorce proceedings, courts have found above ground pools to be personal property. See, e.g., Carder v. Carder,
Summit App. No. 21513, 2003-Ohio-5158, at ¶ 14; Webber v.Webber, Preble App. No. CA2003-03-006, 2004-Ohio-3172, at ¶ 22. Accordingly, we conclude that the trial court could have reasonably concluded that Martin failed to satisfy his burden of proving that the pool was a gift.
 {¶ 24} Because Martin failed to meet his burden of proving that the pool was a gift, the trial court proceeded to determine whether Martin was unjustly enriched by his retention of the pool. "Unjust enrichment occurs `when a party retains money or benefits which in justice and equity belong to another.'"Cooper at ¶ 30, quoting Liberty Mut. Ins. Co. v. Indus. Comm.
(1988), 40 Ohio St.3d 109, 111; Dixon v. Smith (1997),119 Ohio App.3d 308, 317. As we noted in Cooper, "[i]n order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: "(1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment." Cooper at ¶ 30, quoting Pine v. Price, Columbiana App. No. 01-CO-46, 2002-Ohio-5223. See, also, Dixon, supra; Hatten v. Shaw (May 15, 2000), Lawrence App. No. 99CA30.
 {¶ 25} Here, the parties do not dispute that the pool remains on Martin's property, and Martin testified that he continues to use the pool. Additionally, Martin stipulated that Wheeler made all of the payments on the $4,000 pool loan. Thus, the record contains some competent, credible evidence tending to demonstrate that Wheeler conferred a benefit upon Martin, and that Martin knew of the benefit. Furthermore, Wheeler purchased the pool in August 2001, and moved out of Martin's residence in November 2001 — just three months later. Hence, the record contained some competent, credible evidence that Martin retained the pool under circumstances where it would be unjust for him to retain that benefit without payment. Therefore, we cannot say that the trial court's finding of unjust enrichment is against the manifest weight of the evidence.
Accordingly, we overrule Martin's sole assignment of error and affirm the judgment of the trial court.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment only.